UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 00-6182-CR-FERGUSON

UNITED STATES OF AMERICA

v.

HENRY J. REGA,

    DEFENDANT,
_____/

## GOVERNMENT'S RESPONSE TO STANDING DISCOVERY ORDER

The United States of America, in response to the Standing Discovery Order issued in this case file this response which is alphabetized and numbered to correspond to that original order and states as follows:

A. 1. There are written or recorded statements made by the defendant. See attached report of interview conducted by Fort Lauderdale Detective David Jenkins.

    2. The defendant made oral statements after arrest, in this matter in response to interrogation by a then known-to-be government agent. See attached six (6) page statement of the defendant given to.

    3. Defendant did not testify before the grand jury.

    4. The defendant has a criminal history which is attached.

    5. Books, papers, documents, photographs, tangible objects, buildings or places which the government intends to use as evidence at trial to prove its case in chief, or were obtained from or belonging to the defendant, include but are not limited to: demand note recovered from the Sun Trust Bank on May 4,2000; FDIC certificate for Sun Trust Bank ; twelve (12) surveillance photographs from the Sun Trust Bank robbery; Lab report identifying Rega's fingerprints on demand note; demand note recovered from Washington Mutual Bank; FDIC Certificate for Washington Mutual Bank; Photographs of the White Toyota Corrola used by the defendant in the bank robberies; sun glasses and baseball cap worn by the defendant and plastic bag containing proceeds from the May 8,2000 robbery of the Bank of America located at 6100 N. Federal highway.

    6. The results or reports of physical or mental



examinations or scientific tests or experiments made in connection with this case, if any exist, will be provided as soon as they are received by the undersigned.

    B.   The United States requests the discovery and production of those items described and listed in paragraph B of the Standing Discovery Order, and as provided by Federal Rule of Criminal Procedure 16(b).

    C.   The only information or material known to the United States which may be favorable to the defendant on the issues of guilt or punishment within the scope of Brady v. Maryland, 373 U.S. 83 (1963) or United States v. Agurs, 427 U.S. 97 (1976) is as follows: none known.

    D.   The existence and substance of payments, promises of immunity, leniency, preferential treatment, or other inducements made to prospective government witnesses within the scope of United States v. Giglio, 405 U.S. 150 (1972) and Napue v. Illinois, 360 U.S. 264 (1959) is as follows: none known

    E.   None Known

    F.   The defendant was identified in a photo spread.

    G.   The government agents and officers involved in this case have been advised to preserve all rough notes they may have taken.

    H.   The United States will advise the defendant, prior to trial, of its intent to introduce during its case in chief, evidence of other crimes, wrongs or acts as provided by Federal Rule of Evidence 404(b). The Defendant committed two additional bank robberies in Fort Lauderdale, FL These robberies occurred on May 1,2000 at the Bank of America located at 888 NW 62nd street and on May 8,2000 at the Bank of America located at 6100 N. Federal Highway. The defendant is being prosecuted by the State of Florida for the aforementioned bank robberies. Any evidence made available for inspection may be offered in the government's case in chief under Federal Rule of Evidence 404(b) or otherwise.

    I.   The defendant was not an aggrieved person as defined in Title 18, United States Code, Section 2510(11), that is, the defendant was not a party to any intercepted wire or oral communication or a person against whom the interception was directed.

    J.   The United States has ordered transcripts of the grand jury testimony of all witnesses who will testify for the government at the trial of this case. The transcripts will be provided as required by Title 18, United States Code, Section 3500.

    K.   There are no controlled substances which are the subject of the indictment in this case.

L. The United States did not seize or forfeit any automobile, vessel or aircraft allegedly used in the commission of the offenses in this indictment.

M. Latent fingerprints of the defendant were recovered in this case. Latent Finger prints were recovered from the demand note used in the 5/6/2000 robbery of the Washington Mutual Bank. These prints were compared with the known fingerprints of Henry Rega and it was determined that the recovered fingerprints matched the known prints of Henry Rega. The lab report of the comparison referenced above will be forwarded upon receipt by this office.

The United States demands, pursuant to Federal Rule of Criminal Procedure 12.1, notice of the defendant's intention to offer a defense of alibi. The approximate date, time and place at which the alleged offenses were committed are as follows:

Date:     5/4/2000, 5/6/2000

Place     Broward County, Florida

Respectfully submitted,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

By: *[signature]*
Thomas P. Lanigan
ASSISTANT UNITED STATES ATTORNEY

CERTIFICATE OF SERVICE

I hereby certify that a copy of this Government's Response to Standing Discovery Order was mailed this 17th day of July, 2000 to: Pat Hunt, Assistant Federal Public Defender 101 NE 3rd avenue Fort Lauderdale, FL 33301.

*[signature]*
Thomas P. Lanigan
ASSISTANT UNITED STATES ATTORNEY

cc: S/A Eric C. Miller, FBI

This is A Hold up
give me the money
now



This is a Hold up
Give me All your co.1051

Photocopy of demand note used during the
5/06/00 robbery @ Washington Mutual.

The following will be a statement of the defendant HENRY J. REGA as given to Detective David Jenkins of the Ft. Lauderdale Police Department in reference to Ft. Lauderdale Case #00-59672. It is reference to a BANK ROBBERY that occurred at approximately 12:46 on 5/8/00 at the BANK OF AMERICA that is located at 6100 N Federal Hwy. In the City of Ft. Lauderdale Florida.

Q  sir, or the record, would you please tell me your full name, spell it, and your date of birth.
A  HENRY JOSEPH REGA, H E N R Y  J O S E P H  R E G A  10/21/63
Q  sir, could I have your home phone number and home address?
A  954-491 – 6637 61 NW 56th Ct Ft Lauderdale Florida
Q  do you have a work number?
A  970- 0297
Q  Mr. Rega do you realize that I am a Detective with the City of Ft. Lauderdale?
A  Yes.
Q  This empowers me to take your statement under oath. Just prior to going on tape .. I read you your rights from a printed card is that not correct?
A  yes
Q  and you understood each and every one of those rights is that not correct?
A  yes
Q  and then you signed a waiver rights form..
A  yes
Q  how much of an education have you had
A  high school education and 6 years of military service
Q  you understand read and write the English language?
A  oh fluently
Q  ok.. I haven't mistreated you in any way ..I haven't made you any promises in any way ...
A  no
Q  Mr. Rega.. what I'd like you to do .. in your own words tell me what took place at approximately 12:46 PM on today's date.. which is 5/8/ the year 2000.
A  I walked into the bank... I waited in line.. in the teller... told me to come to the line.. I asked the teller for a withdrawal slip.. she said she had none she went to get one... she came back... I handed the plastic bag over the counter.. and told her to fill it up with all her small bills10's 20's 5's and 1's...
Q  ok
A  and I told her hurry up please
Q  ok .. where was this bank located
A  Cypress Creek Road and Federal Hwy
Q  what corner
A  south east corner
Q  do you recall the name of the bank?
A  Bank of America

**Det. D. Jenkins FL 995**     **June 22, 2000**     **FL6312GT**

JUN-23-2000 13:08    04271999 14:54    2    00-55072    P.22/27
HENRY REGA
0-cr-06182-AJ  Document 14  Entered on FLSD Docket 07/20/2000  Pa

| | |
|---|---|
| Q | ok... and you walked in and you first presented her with a withdrawal slip |
| A | no .. I asked her for a withdrawal slip she said she had none and she had to go and get one.. |
| Q | and did she do that |
| A | yes she did |
| Q | and after she gave you the withdrawal slip... |
| A | I told her.. I handed a plastic bag over the counter and opened it up .. I said lets make this easy and just fill it up with all your small bills.. |
| Q | ok and she complied with that |
| A | yes she did |
| Q | did she appear to be in fear |
| A | well yeah she was nervous.. yeah she was very nervous... cuz she was fumbling with the drawer trying to open it .. |
| Q | and she knew what was going on |
| A | no |
| Q | ok..uh .. did you have a weapon at this time |
| A | no |
| Q | did you make any threat of a weapon |
| A | no |
| Q | ok.. once you .. got the money from her .. what did you do after that |
| A | I left the bank and proceeded to go through the parking lot ... and the security guard came out of the bank ... and yelled stop .. stop .. stop .. and I ran .. and I jumped into a car.. the car that was in apartment complex that my wife was driving |
| Q | where is the apartment complex located in reference to the bank |
| A | its directly behind the bank |
| Q | ok .. towards Bayview |
| A | yeah .. actually it would be o Bayview.. the address would be on Bayview |
| Q | ok what I would like you to do is describe the person at the bank .. the teller that you were dealing with |
| A | she was a young.. young girl blond hair with braids in it ...a white female with braids in her hair |
| Q | about how old |
| A | I would say .. sh... 25-26 years old |
| Q | ok.. I would also like you to describe yourself to me .. what you were wearing at the time the bank robbery took place |
| A | oh .. a long sleeve black shirt.. black shorts.. shoes.. black baseball hat and sunglasses |
| Q | ok .. and did you have any shirts on underneath the black shirt? |
| A | I had this purple tank top |
| Q | ok .. now .. you ran to your car.. and your wife was driving that |
| A | yes ... uh huh |

**Det. D. Jenkins FL 995**        **June 22, 2000**        **FL6312GT**

| | |
|---|---|
| Q | what kind of vehicle do you have |
| A | Toyota Carolla .. |
| Q | color |
| A | white |
| Q | how many doors |
| A | 4 |
| Q | the year? |
| A | I think it's a 93 |
| Q | and .. your wife was driving so she is in the drivers seat.. and where were you in the vehicle .. |
| A | the passenger seat.. |
| Q | front? |
| A | front |
| Q | ok .. and you were carrying the plastic bag with the money .. |
| A | yes sir |
| Q | alright .. what did you do after you entered the vehicle |
| A | we just drove off.. I didn't realize that we were being followed.. by the security guard.. until we stopped at a garbage can to throw away the black shirt and the black that and then the van pulled in front of us ... |
| Q | when you immediately got in the vehicle .. which way were you traveling |
| A | south .. |
| Q | how far did you go south |
| A | to 59th St. |
| Q | and then what |
| A | we turned right |
| Q | so you were in a residential neighborhood back there |
| A | yeah yeah |
| Q | ok and then where did you go |
| A | to the trash can |
| Q | and where was that located at |
| A | that was on 59th St. |
| Q | is it .. like a residential trash can .. |
| A | oh no .. it's a (UI) trash can |
| Q | by the house |
| A | yeah by her house waiting to be picked up |
| Q | ok did you throw the trash .. the .. |
| A | no I never got to try .. what happened was .. when I pulled the car over to stop .. and when I got out of it .. there was a van behind us .. we didn't know they were following us .. pull around in front of us .. and I realized it was the same person that was in the bank and chased me out of the bank .. the security guard.. so I jumped back in the car.. and said.. turn around .. lets get out of here.. |
| Q | ok.. the Security Guard.. was that a bank security guard? |

**Det. D. Jenkins FL 995**          **June 22, 2000**          **FL6312GT**

| | |
|---|---|
| A | no |
| Q | security guard for someone else |
| A | yeah from some other place.. I didn't even know he was still in the bank .. I thought he had already left.. |
| Q | he did see you in the bank |
| A | yeah .. he chased me out of the bank |
| Q | ok.. now .. you realize that they are following you |
| A | I finally realized that later.. yeah |
| Q | ok .. and .. once you left that neighborhood where did you go then .. |
| A | uh .. we drove down Federal Hwy for a little while and made a u turn o Federal Hwy to loose these people.. |
| Q | now were you going south |
| A | no we started headed north on Federal toward 62nd... and we cut over to the lanes quick so this guy couldn't keep coming over with us .. and we made an immediately u turn but as I did that there was a Policeman sitting right there.. and he pulled right out behind us... and flipped his lights on and so we took the very next right .. which was a motel .. and pulled the car to a stop I got out of the car and jumped the fence.. |
| Q | ok now .. a Policeman now has activated his emergency lights .. he is attempting to stop the vehicle .. do you stop? |
| A | yeah my wife stopped yeah |
| Q | immediately |
| A | well yeah .. she turned into that street and stopped |
| Q | ok and you went into a parking lot of a Motel |
| A | uh huh .. and I got out of the car and ran |
| Q | do you know the name of the Motel |
| A | I have no idea |
| Q | do you know where it was located |
| A | federal Hwy |
| Q | do you know what hundred block |
| A | its got to be about .. 50 something hundred block .. 59 - .. 50 its near Imperial Point.. south of Imperial Point so I guess Its like..its got to be around the 5600 block or something like that |
| Q | ok now there is a school there? |
| A | yeah there is a school there |
| Q | that's Westminster Academy.. so you were just north of there |
| A | I don't think it was.. yeah it must have been just north of Westminster Academy I guess.. |
| Q | ok now the Policeman pulls up after your wife stops and you immediately jump out |
| A | uh huh |
| Q | did you take the money with you |

**Det. D. Jenkins FL 995**      **June 22, 2000**      **FL6312GT**

A   yeah .. but the bag broke .. I left and it stayed right there
Q   where did the bag break ..
A   as I was jumping the fence
Q   ok.. so you were going over the fence.. you were going west bound
A   yeah
Q   ok .. once you went over the fence.. where did you go
A   I went .. I ran in to the school.. into the Commodores and I ran up to the third floor and there was a door open .. it was a music room .. and I went in there .. and uh .. the gentlemen inside.. I guess he was a school teacher.. he said .. can I help you .. and I said yeah .. do you know where there is a pay phone I can use.. he says come on down stairs.. I'll show you ... there is a pay phone right down over here.. and as we walked out of the school .. there was a male ... a male man was there delivering mail and I could see the same white van that was following m e .. and the Policeman sitting right there.. they were talking so I was kinda like .. was being kinda hesitant to go .. to use the phone.. cuz I know as soon as I walk by the mail man they are going to see me... and that's when the school teacher said that ... he's right here.. he's right here..
Q   he was yelling to the Policeman ..
A   uh huh .. that is when I ran back through the school and started hopping fences in neighborhoods.. I don't know where I was at .. I was just hopping fences to get away from em ..
Q   ok .
A   cuttin through neighborhoods.. and then I hid in this one neighborhood
Q   you were eventually taken into custody correct?
A   yes I was
Q   and .. you were taken into custody at approximately 1:13 PM..
A   uh huh
Q   and at that location you were behind the house that is located at 2220 NE 57th St..
A   uh huh
Q   and as you were taken into custody is that the first time you made contact with me?
A   yes I was
Q   and were you detained at that site until witnesses came by
A   yes
Q   and .. do you know if one of those was the teller that you robbed?
A   I didn't really see her but I guess so .. I would imagine so ...
Q   ok .. and you were positively identified at that point..
A   (UI)
Q   ok.. after you were taken into custody .. you were transported to the ft Lauderdale Police Department
A   uh huh

**Det. D. Jenkins FL 995**         **June 22, 2000**            **FL6312GT**

| | | |
|---|---|---|
| Q | | ok do you know if your wife was taken into custody |
| A | | uh .. from you telling me yes but I didn't |
| Q | | but you didn't know other than |
| A | | oh yeah .. apparently so .. I mean when the cop stopped she stayed in the car |
| Q | | she didn't make any attempt to flee from that point on |
| A | | no |
| Q | | and your wife what's her name |
| A | | Colleen |
| Q | | and do you know Colleen's date of birth |
| A | | uh .. 11/28/57 .. oh... 11/24/57 |
| Q | | and Colleen has the same last name as you .. how long have you been married to her |
| A | | 10 years. |
| Q | | ok .. now .. colleen was the driver of your vehicle |
| A | | yeah |
| Q | | was she aware of what you were going to do today |
| A | | yes |
| Q | | did you tell her that you were going to rob the bank |
| A | | yes |
| Q | | how did you come to rob this bank.. did you know this is where you were going .. Or did you just... |
| A | | that was well .. actually I was going.. oh I don't know .. I ws going down that neighborhood.. to pick up that bags of pills and marijuana .. you found on me.. |
| Q | | ok.. but you had an idea that you were going to rob a bank prior to picking up your narcotics |
| A | | yeah |
| Q | | so your wife had knowledge of this.. did your wife have knowledge of any other bank robberies |
| A | | no |
| Q | | have you committed any other bank robberies? |
| A | | yes |
| Q | | ok... Mr. Rega.. is there anything else that you would like to add to this statement at this point in time? |
| A | | well I just . I mean I don't know .. I know what I did I did .. and my wife .. I don't really think she should.. you know.. I don't know.. I don't know how to say this.. I mean ... I don't think my wife should really be punished for what happened .. for my stupidity ... i mean she wasn't .. I mean sure she was driving the car and she had knowledge.. of it .. I got two little kids I would like to see taken care of I mean .. and If I have to I will do what I got to do .. that .. you kNow.. to make things work .. I know people who do things .. and I can you know.. show You places and things if that will help her stay away .. I mean that is all I can say at this point.. |

**Det. D. Jenkins FL 995**         **June 22, 2000**         **FL6312GT**

| | |
|---|---|
| Q | ok Mr. Rega.. you mentioned earlier that you committed other bank robberies.. How many |
| A | prior to this one |
| Q | yes |
| A | 3 |
| Q | so you have done a total of 4 |
| A | total of 4 |
| Q | this one you did at 6100 N federal |
| A | uh huh |
| Q | have you done any others in Ft Lauderdale? |
| A | there was one on uh .... Wilton Manors on 26th St. Sun Trust.. |
| Q | when did you commit that robbery |
| A | that was last week .. I don't remember the exact date.. I don't remember the exact date.. I think it was Friday .. was it Friday or Thursday? |
| Q | what others |
| A | and there was one in Pompano .. Washington Mutual... |
| Q | and where was that located at |
| A | it on Powerline road and Racecourse and Powerline road in that Plaza right there.. and there was the one.. there's one on uh .. Cypress Creek and Powerline |
| Q | 62nd Street and Powerline |
| A | yeah 62nd Street and Powerline |
| Q | Mr. Rega is there anything else you would like to say? |
| A | at this point in time I don't .. there is not much more to say .. .I mean I don't know what else to say .. you know.. |
| Q | ok. |

THIS WILL CONCLUDE THE STATEMENT OF HENRY REGA AS GIVEN TO DETECTIVE
DAVID JENKINS, F.L.P.D., AND TODAY'S DATE IS MAY 8 , 2000 AND THE TIME
IS APROXIMATELY 3:02 PM. THE STATEMENT WAS TAKEN AT THE FT LAUDERDAL
POLICE DEPARTMENT.

**Det. D. Jenkins FL 995**          **June 22, 2000**          **FL6312GT**













